WILLIAM W. WATSON, SCHUYLER E. TYLEE, AND UNITED
STATES TRUST COMPANY OF NEW YORK, EXECUTORS
AND TRUSTEES UNDER THE LAST WILL AND TESTA-
MENT OF JACQUES WOLF, DECEASED, PLAINTIFFS,
v. FRED BROWER, JEROME PAYET, *ET ALS.*, DE-
FENDANTS.

Superior Court of New Jersey
Chancery Division

Decided June 25, 1956.

*Mr. Charles B. Alling,* attorney for plaintiffs.

*Messrs. Gardner & Williams,* attorneys for defendants Passaic-Clifton National Bank and Trust Company, trustee of the Jacques Wolf & Co. Employees Trust Fund, Jacques Wolf & Co., George Pipling, and Fred Brower.

*Mr. Milton B. Levin,* attorney for Joseph Lang, Class 1, and Class 2, defendants.

SULLIVAN, J. S. C. Jacques Wolf died on January 26, 1954, a resident of Essex County, New Jersey, and his last will and testament has been admitted to probate by this court. Under paragraph Seven, clause 5 of said will, a trust of approximately $350,000 was set up to pay a pension of $125 per month to each employee of Jacques Wolf & Co., in the employ of said company at the date of decedent's death, "who may hereafter retire after having served with said Company for at least twenty-five (25) years * * *." Under the same trust a similar pension is also paid "To each former employee of Jacques Wolf & Co. who has retired after twenty-five (25) or more years of service with said Company * * *." At the date of Jacques Wolf's death there were 219 persons in the employ of the company. Doubts have arisen as to the meaning of the words "who may hereafter retire" and "who has retired."

One contention is that "retire" means "leave the company," so that any former employee with at least 25 years' service

is entitled to a pension no matter how his employment was terminated, and any present employee, as soon as he completes 25 years of service, may terminate his employment and thereby qualify for the pension.

The difficulty with this construction however, is that, if adopted, and if each employee avails himself of his asserted right to the pension by terminating his employment with the company as soon as he completes 25 years of service, then the pension plan is completely unsound on an actuarial basis. The expert testimony indicates that the plan will not last more than five years and that the entire trust fund will be exhausted within that span. Thus, the first few "25-year men" could retire from the company and eat up the trust fund with their pension claims and leave nothing for the employees who retire later.

At the present time it appears that the trust income is just about adequate to meet pension payments. I have no doubt, however, that news of the fund's precarious financial situation would cause a rush of retirements if this construction were adopted.

On the other hand, the trustees of the trust argue that the decedent could not have intended a system of pension payments that could or would wipe out the fund in about seven years. Mr. Wolf was an experienced and successful businessman. He was most familiar with the operation of his business and was periodically furnished with personnel statistics on his employees, their number, their years of service and the like. It is obvious that he had the welfare of the employees at heart and intended by this trust to make benefits available to all of them as a reward for and incentive to long years of service. With such a background, it is difficult to see how he would have intended a plan that could well fold up in seven years, benefitting only a comparatively few of his employees and leaving the great majority without anything. Such a construction of the will would really amount to a frustration of the testator's purpose. In addition, if this construction were adopted, the court would then be faced with an almost impossible

situation of having to abate the pension payments. After all, this trust is actually a gift to a class equally. If it appears that the fund is inadequate, there should be a *pro rata* abatement of the payments, so that all will have an equal share. As a practical matter it would be impossible to determine what the final share of each participant would be until the trust had run its full course—a period of some 50 years. By that time a retroactive increase in earlier payments would be largely academic.

The trustees contend that Mr. Wolf must have had some feasible plan in mind and that a careful analysis of the trust provisions does indicate a workable pension scheme within the framework of the will itself. They say that the decedent intended that only those employees who reached retirement age could retire and qualify for the pension.

The company itself has no retirement plan or policy of its own, so that the decedent could not have intended that company approval was a condition of retirement. Instead he seems to have set as the retirement age, that age at which a person becomes eligible for social security, *i. e.,* 65 years. The provisions relating to the trust to pay the pensions has the following language:

"* * * it being my intention that all such persons [those entitled to pensions] shall, except as otherwise hereinafter provided, only be entitled to receive from this trust estate the difference, if any, between regular monthly payments from Social Security Benefits, * * * and the sum of One hundred twenty-five dollars ($125.) a month."

This would indicate that in order to be eligible to receive pension payments a person would have to be eligible for Social Security and therefore have reached the age of 65 years. Social Security has become a part of our way of life and people commonly speak of retirement as meaning that age at which they qualify for social security benefits. This seems to have been what the decedent had in mind when he used the words "retire" and "retired."

This construction is much more in line with the testator's purpose as he himself expressed it and with the realities of

the situation. It furnishes a pension plan that is actuarially sound and will provide full pension payments to all employees who qualify.

It might also be noted that the will provides for charitable and other gifts over of the remaining trust assets after all pension payments have been completed. Adopting the first construction would make these legacies meaningless, whereas the "retirement age" interpretation will not only mean adequate funds for all pensions but also for the gifts over when the trust ends.

The trustees are therefore instructed that under a proper interpretation of paragraph Seven, clause 5 of the decedent's will, the only employees entitled to a pension are those mentioned in the will who serve or have served the company for at least 25 years and terminate or have terminated their employment after having reached the age of 65 years.